## Case No. 3,442.

### CROWEL et al. v. The RADAMA.

#### [2 Cliff. 551.] [1]

#### Circuit Court, D. Maine. April Term, 1866. [2]

COLLISION—SAILING VESSELS—RULES OF NAVIGATION—SALVAGE.

1. A schooner was heading southwest by south, a bark north-northwest, with the wind west. The bark was close-hauled on the wind, the schooner running six points off, having the wind somewhat free. The bark was seen from the schooner when at a distance of about two miles, off the weather bow, at which time the helm was hove up and the vessel kept off. The schooner was discovered from the bark when the vessels were about seven or eight hundred yards apart, three points on the bark's weather bow, at which time her helm was put hard up. When the vessels came together the schooner was heading east, the bark northeast or east-northeast. The bow of the bark struck the schooner by the main rigging, on the starboard side. *Held*, that the bark was responsible for the damages occasioned by the collision.

2. The rule applicable to this case is, that when two vessels are approaching each other from opposite directions, that one which has the wind free, or is sailing before or with the wind, must keep out of the way, and the one close-hauled must keep her course.

3. Where, in consequence of a collision, the injured vessel drifted ashore, and $1,600 was paid to salvors, the decree of the district court in awarding $483 on account of salvage was sustained.

[Appeal from the district court of the United States for the district of Maine.]

Admiralty appeal in a cause of collision. The libel was in rem against the bark Radama [William Forbes and others, claimants], and the libellants [David Crowel and others] were the owners of the schooner Montezuma, of Beverly, in the district of Massachusetts. The bark sailed from the port of New York on the 10th of January, 1864, bound on a

---

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]
[2] [Affirming Case No. 11,521.]

voyage to the port of Portland in this district, and the schooner from Salem on the following day, on a voyage to Cayenne in South America. The libel alleged that the officer of the deck, in charge of the schooner on the 11th of January, off Cape Cod, between seven and eight o'clock in the evening, discovered the bark off the weather bow, showing a red light; that the wind was west; that the schooner was heading southeast by south; that the bark was heading north-northwest; that the master seeing the light ordered the schooner to be kept off, which was done. Under this order, it was alleged, the schooner gave way sufficient to have cleared the bark, but when the two vessels had approached near each other, the master of the bark seized the wheel of his vessel and hove it hard up, which caused the bark to come down upon the schooner, carrying away her main rigging on the starboard side, and otherwise injuring her, so that she drifted ashore; that she was damaged to the amount of $300, and her cargo to the same amount; and that the sum of $1,600 was awarded to the salvors of the vessel who got her off and run her into port. The owners of the bark alleged, in their answer, that the schooner was discovered when the vessels were about seven or eight hundred yards apart, and that she was three points on the weather bow of the bark; that the helm of the bark was put hard up, but that the helm of the schooner was put to starboard, and that the schooner attempted to run across the bows of the bark, and thereby occasioned the collision. The decree of the district court was to the effect that the collision occurred as alleged in the libel; that the bark was solely in fault; and that the court awarded damages in the sum of $987 to the libellants. [Case No. 11,521.]

W. F. Choate and Fessenden & Butler, for libellants.

J. & E. M. Rand, for claimants.

CLIFFORD, Circuit Justice. Much less conflict exists in this case than is frequently found in cases of this description. The pleadings and proofs show that the two vessels were sailing in nearly opposite directions. The collision occurred at the time and place alleged in the libel. It was not a dark night, and the wind was west, and blowing a good smart breeze. Both vessels were well manned and equipped, and both had proper lookouts and sufficient lights, and the proof is full to the point that each saw the other in ample time to have avoided the collision. Any argument is, therefore, unnecessary to show that it is a cause of fault, as the collision occurred in the open sea, and without any circumstances appearing to indicate that it might not have been prevented by a proper observance of the usual and well-known rules of navigation applicable to the case. The bark was heading north-northwest, and the schooner was heading south-

east by south, but the bark was close-hauled on the wind, and the schooner was running six points off, which made her somewhat free. The testimony shows that the schooner saw the bark before the bark saw the schooner, but the latter was seen by the former when they were half a mile apart, and in season to have adopted every proper precaution to have avoided a collision. Where two vessels are approaching each other from opposite or nearly opposite directions, the fact that each does not discover the other at the same moment cannot materially affect the question as to which was in fault, if each made the discovery of the approach of the other in season to adopt every necessary precaution. The bark was the larger vessel, and being without cargo, she was light in the water, and she was seen by the schooner when the two vessels were two miles apart. Those on board the schooner testify that her helm was put up as soon as the bark was seen, and that she immediately began to give way.

Doubts are entertained whether that statement can be regarded as entirely correct, but the proofs are satisfactory that the helm was seasonably put up, and that the schooner had given way five or six points, if not more, before the collision occurred. The respondents concede that when she was first seen by those on board the bark, she was heading southeast by south; and it is fully proved that when the collision occurred, or shortly after, she was heading east. A corresponding change was made in the course of the bark. When first discovered, she was heading north-northwest, and it is clearly shown that at the time the collision occurred she was heading northeast, or perhaps east-northeast. Both vessels gave way, and as they were sailing in opposite directions, it is not difficult to see how the collision occurred. Unquestionably there is some conflict in the testimony as to the bearing of the respective vessels towards each other at the time the one first discovered the other, but it is not material to determine that controverted point, as it is clear that both gave way, and that the bark struck the schooner at amidships on the starboard side. A discussion upon the law of the case is unnecessary, as the rule is well settled that a vessel which has the wind free or is sailing before or with the wind, where two vessels are approaching from opposite directions, must keep out of the way of the approaching vessel, if the latter is close-hauled. St. John v. Paine, 10 How. [51 U. S.] 557; The Catharine, 17 How. [58 U. S.] 170; The Osprey [Case No. 10,606]. The correlative duty of the vessel close-hauled is to keep her course, so that the vessel whose duty it is to keep out of the way may not be baffled or defeated in her attempt to perform her duty. Mail Steamship Co. v. Rumball, 21 How. [62 U. S.] 384. Exceptional cases may arise, as was admitted in that case, but there is nothing in this rec-

ord to take the case out of the general rule. On the contrary, the means adopted by the schooner to keep out of the way were the usual and proper means, and it is not doubted by the court that they would have been sufficient if the bark had held her course, as she was bound to do. She did not do so, and consequently it must be held that she was in fault and responsible for the consequences. The reasons for this conclusion might be very much extended, but as the question is merely one of fact, it is not thought necessary to pursue the investigation. The respondents also contend that the damages allowed in the district court were excessive. The complaint in that behalf is twofold: first, they contend that the amount allowed for the injuries to the vessel was more than sufficient to make good the damage; secondly, that the district court erred in allowing anything for salvage, because the crew unnecessarily and improperly abandoned the vessel. The positive testimony of one of the owners was, that he paid out for the repairs on the vessel the sum of $504, and the district court allowed that sum. The testimony of the owner was, that she was not as good after being repaired as she was before the collision. Suffice it to say that the allowance was substantially correct, if the witness was entitled to credit. In view of all the circumstances, I am of the opinion that I ought not to reverse the decree on that ground. The second ground of complaint is, that the district court erred in allowing the salvage. The amount allowed was only $483; and I am not able to see that there is any error in the decree of the district court.

One may now see that self-preservation did not require the crew to abandon the vessel, but they had to determine that fact when the collision occurred, and at a time when the extent of the injuries to their vessel was not known. Believing that their vessel was very seriously damaged, they went on board the bark; and it does not appear that the officers and crew of the bark thought at the time that their course was an improper one. Looking at all the circumstances, I cannot say that their conduct was such as to impeach their motives, or their fidelity to their duty. The decree of the district court is, therefore, affirmed, with costs.